## MOON MOTOR CAR CO., OF NEW YORK, v. MOON MOTOR CAR CO., Inc.

Circuit Court of Appeals, Second Circuit.
November 19, 1928.

No. 43.

Carl Ehlermann, Jr., of New York City (C. D. Williams, of New York City, of counsel), for appellant.

Cotton & Franklin, of New York City (George H. Savage and Franklin S. Wood, both of New York City, on the brief), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). ■ The maker promised not to sell any cars within the specified district, except to the dealer, who in turn promised to buy 900 cars, to sell no other make of cars anywhere, to set up a shop, and to push the sales. These promises were given in exchange for each other and created a contract; of so much there can be no doubt. The maker has repudiated this contract, and so committed a wrong, so that at least the question arises whether the dealer can recover any damages for being deprived of his monopoly of Moon cars in his district. This both sides seem to think depends upon whether the maker has promised to sell any cars or not. We cannot agree. Suppose that the dealer has promised to buy, and the maker has not promised to sell. Nevertheless the dealer had his monopoly by virtue of which the maker must sell to him, if he would sell at all. The contract had been in force for more than three years, and had only seven months to run; we cannot say that it was an impossible task to show, with certainty enough to support a verdict, how many cars the maker would in fact have delivered under the pressure of this limitation, even though he was not legally bound to deliver any at all.

It is therefore not necessary at present finally to decide whether or not he was so bound, and it is best not to do so, because the complaint contains, and could contain, none of the setting in which the words were used, and this is always competent, and usually necessary, to their understanding. As the case must go back, we say only this, not wishing it to be taken as controlling, but merely as indicative of what the words mean, if the surroundings do not change that meaning. The maker did not expressly promise to sell. This would, of course, not be final. Mills-Morris Co. v. Champion Spark Plug Co., 7 F.(2d) 38 (C. A. 6); Ellis v. Dodge Bros., 246 F. 764 (C. C. A. 5); Wood v. Duff-Gordon, 222 N. Y. 88, 118 N. E. 214; Kentucky, etc., Co. v. Lucas, (D. C.) 5 F.(2d) 723. On the other hand, he did expressly promise to supply parts, but without preference, and only as he was able to fill orders in the sequence of their receipt. He made no unconditional promise to supply even these, which were far less substantial commitments than completed cars. If there be nothing disclosed to change the normal meaning of the words, it would in our judgment be unreasonable to imply an absolute promise to supply 900 cars, in the face of these express stipulations as to the parts.

It is true that this left the dealer exposed to a "put" of 75 cars a month, but the resulting inequality was not serious. The maker had to keep up his metropolitan market, and would certainly do his best to allocate his full stint to the dealer, through whom alone he could sell. The absence of an express promise probably indicated an unwillingness to give more than the security arising from the monopoly. At any rate, if he had meant to promise at all, he would certainly have guarded this obligation like the lesser one which he expressed. We leave this aspect of the case open for the plaintiff to prove, if it can, that the words ought not to be read so literally, and we need hardly add that on that issue it may show anything, except what the parties said to each other outside the writing.

■ There remains the question whether the terms are too indefinite to be enforced. At first blush this would seem not to be relevant, if the maker has not promised to sell, because it is the dealer who complains, and his damages will depend on proving how many cars the maker would have voluntarily delivered. Yet, if the contract were unenforceable in respect of the dealer's obligation, it would altogether fall. Were we to save the maker's promise not to sell within the district, and the dealer's not to sell other cars and to set up a salesroom and the like, and nevertheless to cut out the dealer's obligation to take 900 cars, we should be making a new contract.

There is no objection to a promise that it is indefinite so long as the parties can tell when it has been performed, and it is enough if, when the time arrives, there shall be in existence some standard by which that can be tested. It is often said that such a standard must not be one within the uncontrolled power of the promisee, as, for example, that the promisor shall buy at any price which the promisee may fix. Yet, if there

be an independent consideration, as, for example, the dealer's monopoly in the case at bar, it is hard to see why, on principle, such a promise is unenforceable, however inconsiderate and unwise. The case is quite otherwise if the performance be dependent wholly on the promisor's pleasure, since in that case it binds him to nothing at all. Often the question is confused with lack of consideration, as when the only promises are to buy and sell, which is quite another matter. Perhaps some courts would hold a promise such as we have suggested too vague, but when the buyer must choose among classes of chattels which are defined, or will be when the time comes, and at prices then fixed by something other than the promisee's will, exercised ad hoc, the usual rule is that an obligation arises. Whitman v. Namquit, etc., Co. (D. C.) 206 F. 549; 221 F. 49 (C. C. A. 1); Ramey Lumber Co. v. Schroeder Lumber Co., 237 F. 39 (C. C. A. 7); Pittsburgh Plate Glass Co. v. Neuer Glass Co., 253 F. 161 (C. C. A. 6.); Carroll v. Melville Shoe Corp., 272 F. 49 (C. C. A. 2).

That was the case here. The dealer was to choose from among the maker's stock models, fixed not alone with reference to this contract, but by his general production. He was to pay only the list prices, fixed for all buyers, and not for him alone. We cannot see how, on any theory, it could be said that it was impossible to know whether he had performed, or why the promise was too vague to be enforced. Nor would it make a difference if no damages could be recovered, though here they might at least be measured by the least profitable to the maker of any models which the dealer might choose.

It must be owned, however, that the cases are not consistent. Nebraska Aircraft Corp. v. Varney, 282 F. 608 (C. C. A. 8), is flat in the maker's favor, and so is the second ground on which the decision rested in Oakland Motor Co. v. Indiana Automobile Co., 201 F. 499 (C. C. A. 7). Huffman v. Paige-Detroit Motor Car Co., 262 F. 116 (C. C. A. 8), may be distinguished because the dealer had not promised to buy any specified number of cars, and the number could not be ascertained by recourse to earlier transactions between the parties. It is idle to try to reconcile all that has been said, but there is substantial authority for what we hold here, and so far, at any rate, sound principle requires us to go. Hence we think that the plaintiff has laid a breach on which some recovery may be had, even though the maker was under no obligation to sell.

Finally, the defendant argues that the cancellation clause relieved the maker of any obligation whatever, and so destroyed the consideration. It did not, however, give him the power to terminate the contract at his pleasure, as was the case in Velie Motor Co. v. Kopmeier Motor Co., 194 F. 324 (C. C. A. 7), or for "just cause," a condition which was thought too indefinite for execution in Oakland Motor Co. v. Indiana Automobile Co., supra. It could be exercised only if the dealer violated a "condition" of the contract, or if prejudicial dissension arose in his "organization." These were facts independent of the maker's will; they were not even conditional on his satisfaction [Goltra v. Weeks, 271 U. S. 536, 538, 46 S. Ct. 613, 70 L. Ed. 1074; Thompson-Starrett v. La Belle Iron Works, 17 F. (2d) 536 (C. C. A. 2)]. In Huffman v. Paige-Detroit Motor Car Co., supra, the clause was indeed like that at bar, but the distinction appears to have been ignored between an unconditional power and one depending upon objective tests.

The complaint is defective, and should be made more definite and certain, as the District Court may decide, but it sets forth a cause of action.

Judgment reversed; the defendant to answer over.

MANTON, Circuit Judge, concurs in the result.