[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned action came before this court on the special proceedings calendar on March 3, 1997. The defendants have moved to discharge a lis pendens on property in North Stonington. The plaintiff has filed a motion titled "Motion for Order" which the court construes to be an application for a preliminary injunction. In that pleading, the plaintiff seeks an order "to preclude the parties from encumbering, wasting, transferring, mortgaging, or otherwise affecting the real property until further order of the court on the agreement of the parties."
Cross motions for protective orders concerning depositions have been ruled on separately.
Lis Pendens
The defendants have moved to discharge the lis pendens that the plaintiff recorded on December 4, 1996 on a parcel of land of approximately thirteen acres on Route 2 not far from Foxwoods Casino. In their motion the defendants claim that the lis pendens should be discharged because "there is not probable cause to sustain the validity of the plaintiff's claim." The specific ground that they alleged at the evidentiary hearing on this motion and on the plaintiff's application for injunctive relief is that the plaintiff's claims do not come within the definition of those for which a lis pendens may be filed pursuant to Conn. Gen. Stat. § 52-325. CT Page 3231
Pursuant to that statute, a lis pendens may be filed only "if the action is intended to affect real property." Conn. Gen. Stat. § 52-325 (a). That phrase is specifically defined in §52-325 (b) as meaning
 (1) actions whose object and purpose it to determine the title or rights of the parties, in, to, under or over some particular real property; (2) actions whose object and purpose is to establish or enforce previously acquired interests in real property; (3) actions which may affect in any manner the title to or interest in real property, notwithstanding the main purpose of the action may be other than to affect the title of such real property.
The record owner of the land on which the plaintiff recorded the lis pendens is defendant North Stonington Development Associates, L.L.C. The plaintiff contends that because that defendant acquired the land from a transferor that had no legal existence because it was never formally registered, the transfer was invalid. Even if the transfer were invalid for that reason, however, the prior record owner was not the plaintiff but a corporation of which he was a shareholder, North Stonington Associates, Inc. That corporation acquired the property, which consisted of two parcels, from Brian Anderson on August 31, 1993 and from Richard White and Marcia White on December 7, 1994. The plaintiff acquired options to buy both parcels. While the options originally identified both Charles Gattoni and Robert Usen as the buyers, Usen assigned his interest in both options to Gattoni on March 27, 1992 (Ex. C, D).
Though the date of expiration of the Gattoni option appears to be April 1, 1992, there was uncontroverted testimony that Gattoni received compensation for the options at the closings when North Stonington Associates Inc. acquired the parcels.
The plaintiff does not contest the validity of the title of North Stonington Associates, Inc., nor does he claim that he continues to have an interest in the property pursuant to the 1992 options. Accordingly, the court finds that the object of the plaintiff's action is not "to determine title" or "to establish or enforce a previously acquired interest in that property" pursuant to Conn. Gen. Stat. § 52-325 (b)(1) or (2).
The plaintiff's complaint includes eight counts. The plaintiff alleges that he and defendant Zaccaro had agreed that CT Page 3232 he was to be a managing partner in North Stonington Development Associates, L.L.C. and that Zaccaro had committed numerous kinds of misfeasance and malfeasance with regard to the operation of that entity and had denied the plaintiff his rights as a manager and member of North Stonington Development Associates, L.L.C. (hereinafter "NSDA, L.L.C.").
In Count One the plaintiff seeks an accounting for the affairs of NSDA, L.L.C. In Count Two, the plaintiff alleges that defendant Zaccaro converted assets of NSDA, L.L.C. for his own use. In Count Three the plaintiff alleges theft of "the use of the capital" of NSDA, L.L.C. In Counts Four and Five, the plaintiff alleges "false representation" and breach of contract, essentially, breach of representations and agreements that in return for services, the plaintiff would share in the management and profits from development of a hotel on the property owned by NSDA, L.L.C. and a dissolution of that entity and dissolution of its assets. In Count Seven the plaintiff seeks dissolution of the L.L.C. and disbursement of its assets. In the final count, Count Eight, the plaintiff alleges that defendant Zaccaro is holding the plaintiff's interest in NSDA, L.L.C. in a constructive trust as a "partner" in that entity.
The plaintiff presented evidence that the operating agreement of NSDA, L.L.C. designates "A C Realty Trust, Charles J. Gattoni, Trustee" as a member with a 49% interest in the profits, losses and distribution of the L.L.C. (Ex. N, Schedule B) but that since that agreement was signed on July 18, 1995, defendant Zaccaro has taken the position that he can unilaterally reduce the plaintiff's percentage, even to zero. The plaintiff acknowledged that he had agreed to reduce his interest by 14% in order to induce an investor to join the L.L.C. and infuse money into the venture, however the plaintiff testified that this agreement was contingent on Zaccaro doing the same and on actual receipt of the investment dollars.
Conn. Gen. Stat. § 34-167 provides that property acquired by a limited liability company "is property of the limited liability company and not of the members individually. A member has no interest in specific limited liability company property." Likewise, Conn. Gen. Stat. § 34-169 provides that "[a] limited liability company membership interest is personal property." Accordingly, the plaintiff has no interest in the real property of NSDA, L.L.C. that would entitle him partition of the real property. CT Page 3233
Judicial dissolution of a limited liability company is governed by Conn. Gen. Stat. §§ 34-207-210. Those statutes provide for sale of the property of the entity and distribution of net proceeds to the members proportional to their contributions, not, as the plaintiff claims, partition of the real property owned by the L.L.C.
While the claims of malfeasance made by the plaintiff in his complaint may, if proven at a trial on the merits, trigger a dissolution and winding up, those proceedings would concern personal property, that is, the members' interest in the limited liability company.
This case presents issues very similar to those in Wheeler v.Polosek, 21 Conn. App. 32 (1990). In that case, a partner in a partnership filed a lis pendens against partnership real estate in connection with claim for an accounting, for breach of fiduciary duty, and for damages for misrepresentation. The Appellate Court upheld the discharge of the lis pendens on the ground that the claims did not affect the real property within the meaning of Conn. Gen. Stat. § 52-325, since the partner's interest in partnership assets, like a member's interest in assets of a limited liability company, constitutes personal property, not an interest in the entity's real property.
The motion for discharge of lis pendens is granted.
Injunction
While the crux of the plaintiff's position at the hearing appeared to be the reduction of his interest in NSDA, L.L.C., he has not sought injunctive relief as to that interest but has limited his request to one "to preclude the partners from encumbering, wasting, transferring, mortgaging, or otherwise affecting the real property until further order of the court." In order to be entitled to preliminary injunctive relief, the party seeking it must establish a reasonable degree of probability that he will ultimately prevail on the merits and that denial of such relief may result in greater harm to the plaintiff than will result to the defendant from granting relief. Griffin Hospital v.Commission on Hospitals and Health Care, 196 Conn. 451, 457
(1985), citing Olcott v. Pendleton, 128 Conn. 292, 295 (1941).
The plaintiff's claim is that he brought the real property to CT Page 3234 defendant Zaccaro's attention, secured zoning changes and approvals necessary to build a hotel on it, and that Zaccaro orally agreed to give him an equal share in the results of the venture, to which Zaccaro contributed the capital. The plaintiff has presented no evidence that this arrangement was ever made the basis of the written agreements into which he and Zaccaro entered, rather, in the Operating Agreement of NSDA, L.L.C., the plaintiff, who had no funds to pursue development of the land, clearly obtained only a 49% interest, and Zaccaro obtained a controlling 51% interest. Such an interest validly entitles Zaccaro to a dominant vote in transactions by the entity, as provided in the Operating Agreement. By agreeing to the terms of the Operating Agreement, including the percentage interests indicated in it, it appears that the plaintiff agreed to a revision of the alleged oral agreement of equal shares. The plaintiff did not deny signing the Operating Agreement on July 18, 1995. The plaintiff thus agreed that Zaccaro would, in essence, have a controlling interest. The plaintiff has not established likelihood of success on the merits of his claims of theft or conversion, and he has not presented evidence to the effect that Zaccaro is likely to dispose of the property in a manner that will thwart winding-up and dissolution of the limited liability corporation. The harm to defendant Zaccaro from the entry of the order sought would be an inability to exercise his right as a majority member and exposure to expenses to preserve the asset without any hope of contribution from the plaintiff, who has listed his total assets as less than $7,000.00.
The plaintiff has failed to make the requisite showing and his application for injunctive relief is denied.
Conclusion
The defendants' application for discharge of lis pendens is granted. The plaintiff's application for a preliminary injunction is denied.
Beverly J. Hodgson Judge of the Superior Court